IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

UNITED STATES OF AMERICA                                                                    PLAINTIFF

v.                                    No. 4:03CR00180-02 GH
                                          [No. 4:06CV00409 GH]

RICHARD DURNAL                                                                              DEFENDANT

## ORDER

Defendant pleaded guilty, pursuant to a plea agreement, on May 21, 2004, to conspiracy to manufacture and to distribute more than 500 grams of methamphetamine. He was sentenced on August 19, 2004, to 151 months of imprisonment to be followed by five years of supervised release, a $100 special assessment, and restitution of $5,578.78.[1]

On August 30, 2004, defendant filed a pro se notice of appeal. His counsel argued on appeal that this Court erred in enhancing the sentence based on the uncharged fact that defendant possessed a weapon in connection with the drug conspiracy. Defendant, filed a pro se Anders brief, arguing that his attorney coerced him into pleading guilty and did not properly defend him.

By an opinion filed on July 7, 2005,[2] the Eighth Circuit Court of Appeals rejected counsel's argument finding that the firearm enhancement was based solely on facts to which defendant stipulated. The appellate court also rejected defendant's pro se arguments finding that defendant

---

[1] By order filed on March 21, 2005, the Court granted the government's motion that the restitution was to be joint and several with the co-conspirators as was stated in open court.

[2] United States v. Durnal, 138 Fed. Appx. 867 (8th Cir. 2005).

admitted the factual basis for his offense during thorough questioning and affirmed he was pleading guilty voluntarily. The mandate was filed in this Court on August 1, 2005.

On April 4, 2006, defendant filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 as well as a supporting brief. As grounds, he alleges that his plea of guilty was not "knowing and voluntary," that he received ineffective assistance of counsel during the pre-plea proceedings including negotiation of the plea, and that his conviction and sentence were based on materially false information.

Defendant contends that he reads very poorly and as no one read the plea agreement to him or explained it to him prior to his signing it, the agreement was not "knowing;" that his counsel simply told defendant to sign the agreement and he would get 42-months; that his counsel did not provide a copy of the agreement to him or his family until four months after he was sentenced foreclosing any chance to withdraw his plea; and that counsel told defendant, his wife, father and mother that defendant would be released in 42 months, if he pleaded guilty, based on counsel's prediction of a 72-month sentence, less good conduct and drug treatment credit and 6-months home detention compared to a likely sentence of 25 or 40 years to life if convicted at trial without adding that the prediction was contingent of defendant providing substantial assistance of the government. He continues that he intended to challenge his guilt at trial although his counsel failed to investigate valid defenses and gave erroneous advice about what would constitute guilt of distribution in the case and his counsel did not inform defendant of the mandatory minimum sentence of 120-months which could only be overcome by a substantial assistance departure. Defendant asserts that his statements at his change of pleas hearing were not explicit admissions of his guilt and that neither

the government, his counsel or himself described what conduct of his constituted conspiracy or distribution of methamphetamine as his counsel used a passive voice and evasive statement.

He alleges that he received ineffective assistance of counsel as he was not involved in trafficking of methamphetamine and the only evidence of his alleged involvement was a statement by DeLayne Desjardins who gave conflicting stories of his involvement and received only 77 months as the admitted manager of the operation versus his 151-month sentence despite being a minor participant. Defendant continues that his counsel gave grossly erroneous advice regarding his sentence exposure at trial; that his counsel knew he was illiterate when he presented the plea agreement at a time when it could not be read to him; that his counsel failed to investigate valid defenses; that his counsel failed to interview Desjardins or interview other witnesses; that his counsel failed to determine if the firearm allegedly traded by defendant had been dusted for defendant's fingerprints or do a records search; and that his counsel failed to object to the manner in which the drug quantity was calculated.

Finally, defendant contends that his conviction and sentence were based on false information.

The government filed a response on May 8th. It points out that the defendant engaged in an appropriate colloquy discussing the seriousness of the plea he was making and whether or not it was voluntary and the Court's finding that the plea was voluntary and defendant understood the ramifications was later evaluated and affirmed by the Eighth Circuit. The government continues that while he might be accurate in depicting his difficulty in understanding the written pleas agreement, that does not render the plea defective if the Court is satisfied that his plea was voluntary after an oral colloquy.

Turning to the ineffective assistance of counsel claim, the government counters that defendant does not and cannot demonstrate that his counsel's actions fell below the reasonable, objective standard and that he has not satisfied that there is a reasonable probability that he would not have pleaded guilty but for his counsel's alleged unprofessional errors as an incorrect estimate of the offense severity rating standing alone does not constitute ineffective assistance of counsel.

As to the final claim of false information, the government states that the purpose of the oral colloquy is to prevent that exact type of miscarriage of justice and he had ample opportunity to disclaim his guilt at the time of the entry of his plea.

On June 19th, defendant filed a reply. He addresses the government's argument that the appellate court has already ruled that his guilty plea was voluntary by asserting that ruling made no finding on the "knowingness" of his plea – which is his main contention – and kept open the issue of ineffective assistance of counsel. Defendant states that he does not dispute that the Court fulfilled its Rule 11(b)(2) obligations regarding the voluntariness of the plea, but that it is still vulnerable to collateral attack. He asserts that the plea colloquy was defective by not explicitly stating for the record the defendant's knowledge of what specific conduct of his constituted the elements of the crime to which he was pleading guilty and the government did not argue in its response that the factual basis for his conviction was properly stated in court or that the Court's inquiry into the factual basis was sufficient. Defendant continues that there is no record here that the plea agreement was read to him and, unless he was advised of all of the terms of the plea agreement, his plea cannot be considered "knowing."

He argues that his intention to go to trial can be proven by testimony from his family and former counsel as well as letters to and from his former counsel and that his allegation alone is

sufficient at this stage of the proceedings. Continuing, he asserts the gross miscalculation of the sentencing ranges and the misstatement of defenadnt's culpability for merely being present when the psuedoephedrine was delivered and his counsel's failure to investigate reasonable defenses as supporting his ineffective assistance of counsel claim

To the government's argument that he had the opportunity at his plea colloquy to disclaim his guilt, defendant states that he still possessed only the erroneous information given by this counsel, that he only elected to seek to vacate his plea after learning more about the law and facts, and that he pled guilt not because he was, but because of what his counsel had told him made it a "Hobson's choice" so he pled guilt to a charge that he was innocent of to avoid a longer sentence. He maintains that he has cited specific examples of false information that the Court relied upon in finding facts at sentencing and that an evidentiary hearing is warranted.

The Eighth Circuit's opinion in defendant's appeal in United States v. Durnal, 138 Fed.Appx. 867, *868, 2005 WL 1576695, **1 (8th Cir. 2005), follows:

> Richard Durnal (Durnal) appeals the judgment the district court entered after he pled guilty to conspiring to manufacture and distribute more than 500 grams of a methamphetamine mixture, in violation of 21 U.S.C. § 846. His counsel has moved to withdraw and filed a brief under Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), arguing the court erred in enhancing Durnal's sentence based on the uncharged fact he possessed a weapon in connection with the drug conspiracy. Durnal has filed a pro se supplemental brief arguing his attorney coerced him into pleading guilty and did not properly defend him; and he seeks appointment of new counsel.
>
> Counsel's argument fails. The firearm enhancement was based solely on facts to which Durnal stipulated, resulting in no Sixth Amendment violation. The district court applied the Guidelines as advisory, rather than as mandatory, and the record reflects the district court considered the factors of 18 U.S.C. § 3553(a). We conclude the sentence was not unreasonable. See United States v. Booker, --- U.S. ----, ----, ---- - ----, 125 S.Ct. 738, 756, 764-67, 160 L.Ed.2d 621 (2005).
>
> The pro se arguments also fail. During thorough questioning at the change-of-plea hearing, Durnal admitted the factual basis for his offense and affirmed he was pleading guilty

voluntarily.  See United States v. Martinez-Cruz, 186 F.3d 1102, 1104 (8th Cir. 1999) (to be constitutionally valid, guilty plea must be knowing, voluntary, and intelligent; because guilty plea constitutes waiver of various constitutional rights, it must be made with sufficient awareness of relevant circumstances and likely consequences); Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997) (defendant's representations during plea-taking carry strong presumption of verity).  Any ineffective-assistance claim should be deferred to proceedings under 28 U.S.C. § 2255 in which an appropriate record may be developed.  See United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003).

Having reviewed the record independently pursuant to Penson v. Ohio, 488 U.S. 75, 80, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), we find no nonfrivolous issues.  Accordingly, we grant counsel's motion to withdraw, we deny Durnal's motion for appointment of new counsel, and we affirm the judgment.

In addition, the case of United States v. Jones, 403 F.3d 604, 605 (8th Cir. 2005), provides the following summary of the standard to be used in determining ineffective assistance of counsel claims:

> An ineffective-assistance-of-counsel claim involves two components, deficiency in counsel's performance and prejudice to the defendant.  A successful petitioner must show both that "counsel's representation fell below an objective standard of reasonableness," and that there is a reasonable probability that, but for this deficiency in performance, the result of the proceeding would have been different.  Strickland v. Washington, 466 U.S. 668, 687-88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

Set out below are relevant excerpts from defendant's May 21, 2004, change of plea hearing which commenced with defendant being sworn:

THE COURT: And how much formal education have you had?

THE DEFENDANT: Tenth grade.  (Tr. 2, lines 15-17)

\*\*\*\*

THE COURT: You thoroughly understand what this matter is all about?

THE DEFENDANT: Yes, sir.  (Tr. 2, lines 21-23)

\*\*\*\*

THE COURT: Mr. Durnal, are you satisfied with the services rendered thus far in your behalf by your attorney Mr. Jesse?

THE DEFENDANT: Yes, sir.

THE COURT: In other words, you have no complaints to register?

THE DEFENDANT: No, sir.  (Tr. 3, lines 11-17)

****

THE COURT:  You thoroughly understand what Count 1 is all about?

THE DEFENDANT:  Yes, sir (Tr. 3, lines 22-24)

****

THE COURT: Now, after having read Count 1 in its entirety I ask you again for the record are there any questions about these charges?

THE DEFENDANT: No, sir.

THE COURT: I'm confident that Mr. Jesse has discussed with you the federal sentencing guidelines, am I correct?

THE DEFENDANT: Yes, sir.  (Tr. 4, lines 16-23)

****

THE COURT: But statutorily speaking we know that you could be incarcerated or imprisoned for a period of time of not less than ten years nor more than life and could be fined a sum not more than $4 million or both, and if incarcerated, subject to a term of supervised release not in excess of five years.  Are you aware of those terms?

THE DEFENDANT: Yes, sir.  (Tr. 5, lines 7-14)

****

THE DEFENDANT: Well, I understand that I was involved with this lady, you know, that was getting pills from Canada and making methamphetamine, and I accepted a plea like – I forgot how many months was it. Yeah, 5000 to 1500 grams of methamphetamine.  I mean, on occasion, I was there and accepted a box from the mail that some from Canada and she wasn't there and I left it there on the porch for her.

MR. JESSE: Your honor, may I have just one second?

THE DEFENDANT: And that there was guns in the house and that they said that if I would take the plea that they would drop the gun charges on me, you know, if I would accept a plea on the – having to do with, you know, involved in the, you know, conspiracy, you know, being involved with her making meth.  (Tr. 6, lines 24- 25 though 7, lines 1-14)

\*\*\*\*

MR. JESSE: He has agreed that he will truthfully cooperate with the government, and if he does so and satisfies the government's definition of substantial assistance, and subject to the Court's approval, they will make a 5K downward departure motion, or in the event his judgment has been imposed they can file a Rule 35 downward departure where they will recommend no more than a 50 percent departure.  (Tr. 9, lines 2-9).

\*\*\*\*

THE COURT: All right.  Now, you heard your attorney summarize his understanding of this agreement.  I ask you for the record, do you agree or disagree with his summary?

THE DEFENDANT: I agree with it.  (Tr. 10, lines 6-10).

\*\*\*\*

THE COURT: Now, after having discussed what you are going to give up by entering a plea of guilty, is it your wish to continue?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody threatened you to get you to enter a plea of guilty?

THE DEFENDANT: No, sir.

THE COURT: Has anybody promised you anything?

THE DEFENDANT: No, sir.

THE COURT: It's free and voluntary?

THE DEFENDANT: Yes, sir.

THE COURT: State in your own words just what you did?

THE DEFENDANT: This lady was making methamphetamine, and I went to her house and did them and, like I said, I accepted a package in the mail that come from somewhere else while she wasn't there and I guess, you know, just helped her.  I was an, what's it called, accomplice with her.  So I'm guilty.

THE COURT: When did this take place?

THE DEFENDANT: Back, I don't know the date, but it was right before that 9-11 stuff happened and that's how they caught onto her.  Because of that she was getting her packages from Canada, and that's what made them start checking her packages to know what was in them.  You know, that 9-11 happened, and they wanted to know what was in those packages.  So they opened them to check them and that's why they knew what she was up to.

THE COURT: What quantity of drugs are we talking about?

THE DEFENDANT: I'm not, you know, I don't know how much, you know.

MR. JESSE: Your Honor, if I could, the calculation in this case is based in part – as an example, one shipment was 66,000 ephedrine tablets which are a precursor, and from that the guidelines indicate you can take the precursors and do some chemical calculations and come up with the amount of drugs that could have been produced for which you then use the sentencing ranges.

So in this particular case with regard – it's not like the type of case where they find a couple kilos in the trunk of a car or he himself delivered a couple of ounces.  There was some methamphetamine making going on, but part of the calculations are based on the volume of precursors, which for some defendants is a little confusing.

THE COURT: You agree with that analysis?

THE DEFENDANT: Yes, sir.

THE COURT: What were you to receive in exchange for your activities?

THE DEFENDANT: Dope.

THE COURT: Okay.  I'm going to ask Ms. Lipe to summarize for the record the evidence that the government has in its possession, and if this were a formal trial it would be offered to that twelve person jury.  Now, listen carefully, because when she is through I'm going to ask if you [agree] or disagree with her summary.

MS. LIPE: Your Honor, the Drug Enforcement Administration initiated an investigation regarding pseudoephedrine importation from Canada.  Delane Desjardin was developed as a target and it was determined that she was importing and manufacturing methamphetamine.

The postal service seized a parcel containing a large quantity of pseudoephedrine addressed to Jim Morgan, who was Delane Desjardin's brother 907 West 55th Street, North Little Rock, Arkansas.  That address was Desjardin's residence.

-10-

She was the cook. She has pled guilty and she is cooperating. Seized also in that search warrant was a meth lab operating and some finished product on the premises. This defendant and another one were present when the parcel was delivered. The other defendant, Mr. Riley, in fact signed for this parcel using the name of Tom Morgan, but in the past Mr. Durnal had signed for a package of a large quantity of pseudoephedrine.

A the time he signed for it he thought it was methamphetamine he has said. He has also provided glassware for the cooking operation.

At a trial both Mr. Riley and Ms. Desjardin would testify that this defendant received drugs from Desjardin for resale and offered to pay her back, sometimes not in cash. At one point he traded a gun to her and bragged about it to Mr. Riley. Both Riley and Durnal would testify about that. So he used a gun in the drug trafficking crime at that point, but that's the count that's dismissed. But that's the basis for the upward adjustment of two points in the stipulation.

There was also a black book seized Desjardin's black book which she kept meticulous records that showed a large quantity of drugs released to Durnal, far more than personal use amounts, and she was involved in manufacturing methamphetamine in more than one – at more than one location.

THE COURT: You have heard this excellent summary by Ms. Lipe of the evidence that the government has in its possession, and if this were a formal trial it would be presented to that twelve person jury. Now for the record, do you agree or disagree with this summary?

THE DEFENDANT: I agree with it.

THE COURT: All right, what it your plea to County 1?

THE DEFENDANT: Guilty.  (Tr. 12, line 4 through 16, line 7).

As shown above, defendant indicated under oath the factual foundation of the plea, the statutory range of punishment, the stipulated drug quantity, and the absence of any other promises. "Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977); United States v. Fitzhugh, 78 F.2d 1326 (8th Cir. 1996).

In United States v. Granados, 168 F.3d 343, 345, (8th Cir. 1999), the appellate court stated:

> On appeal from the denial of post-conviction relief, Granados contends that ineffective assistance of his counsel prejudiced him because he would not have pleaded guilty if his attorney had informed him of the sentence he would receive under the Sentencing Guidelines. This argument is meritless because the law in this circuit is clear that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory maximum and minimum sentences. Thomas v. United States, 27 F.3d 321, 326 (8th Cir. 1994). Furthermore, a defendant's reliance on an attorney's mistaken impression about the length of sentence is insufficient to render a plea involuntary as long as the court informed the defendant of his maximum possible sentence. See Roberson v. United States, 901 F.2d 1475, 1478 (8th Cir. 1990). It is clear from the record that Granados was informed of his possible maximum sentence.

Thus, the record reflects that defendant's plea of guilty was both "knowing and voluntary," that his counsel's performance was not deficient, and that defendant's conviction and sentence were based on facts that he agreed to under oath.

Accordingly, defendant's April 4th motion (#75) to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is hereby denied.

IT IS SO ORDERED this 12th day of January, 2007.

*George Howard, Jr.*
UNITED STATES DISTRICT JUDGE